# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BETTY CHENIER, EDDIE CUMBO, THOMAS EDISON, BRIGITTE GONZALEZ, KEISHA GRIGSBY, JOSHUA JONES ET. AL. | § § § § § § | |
| *Plaintiffs,* | § § § | |
| vs. | § § | CIVIL ACTION NO. 4:20-CV-01107 |
| UNION PACIFIC RAILROAD COMPANY, PASTOR, BEHLING & WHEELER, LLC, ENVIRONMENTAL RESOURCES MANAGEMENT SOUTHWEST, INC. ERIC C. MATZNER, P.G., PAUL STEFAN, P.G., and CHRISTOPHER YOUNG, P.G. | § § § § § § § § § § § | |
| *Defendants.* | § § § | **JURY REQUESTED** |

## PLAINTIFFS' FIRST AMENDED COMPLAINT AND JURY REQUEST

TO THE HONORABLE JUDGE OF THIS COURT

COMES NOW Betty Chenier, Eddie Cumbo, Thomas Edison, Brigitte Gonzalez, Keisha Grigsby, Joshua Jones et. al. ("Plaintiffs"), file this Amended Complaint and Jury Request against Union Pacific Railroad Company, Pastor, Behling & Wheeler, LLC, Environmental Resources Management Southwest, Inc., Eric Matzner, Paul Stefan, and Christopher Young and in support respectfully shows as follows:

### PARTIES AND SERVICE

1.     Plaintiff, Betty Chenier, resides at 1009 Redondo Dr. Houston, TX 77015, Harris County.

1

2. Plaintiff, Eddie Cumbo, is a resident of Houston, Harris County, Texas.

3. Plaintiff, Thomas Edison, resides at 7320 Jensen Dr., apt. 122, Houston, Texas, Harris County.

4. Plaintiff, Brigitte Gonzales, as next friend of minor, V.G., resides at 808 Woodland St., Houston, TX 77009, Harris County.

5. Plaintiff, Carolton Hall, is a resident of Houston, Harris County, Texas.

6. Plaintiff, Letisha Johnson, is a resident of Houston, Harris County, Texas.

7. Plaintiff, Joshua Jones, resides at 4539 Market St., Houston, Texas 77020, Harris County.

8. Plaintiff, Deron Mcgurie, resides at 3609 Cactus St, Houston, TX 77026, Harris County.

9. Plaintiff, Lisa Moore, resides at 5401 Arapahoe St., Houston, Texas 77020, Harris County.

10. Plaintiff, Carol Nelams, resides at 4911 Noble St., Houston Texas 77020, Harris County.

11. Plaintiff, Karen Robinson, resides at 3303 Gillespie St. Houston, Texas 77020, Harris County.

12. Plaintiff, Latacha Williams Ruth resides at 5315b Cypress Creek Pkwy. Houston, TX 77069, Harris County.

13. Plaintiff, Leslie Washington, resides at 11230 Blades St., Houston, TX 77016, Harris County.

14. Defendant, Union Pacific Railroad Company, is a corporation organized and existing under the laws of the State of Delaware. This Defendant is authorized to do business in

Texas and may be served by serving its registered agent for process in Texas, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.3.

15.     Defendant, Pastor, Behling & Wheeler, LLC, is a domestic limited liability company organized and existing under the laws of the State of Texas with a principal place of business in Round Rock, Texas. This Defendant is authorized to do business in the State of Texas and may be served with process through its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

16.     Defendant, Environmental Resources Management Southwest Inc., is a domestic limited liability company organized and existing under the laws of the State of Texas with a principal place of business in Houston, Texas. This Defendant is authorized to do business in the State of Texas and may be served with process through its registered agent for service of process, Cogency Global Inc., 1601 Elm St., Suite 4360, Dallas, TX 75201.

17.     Defendant, Eric C. Matzner, P.G., is an individual and a licensed geoscientist working for  Pastor, Behling & Wheeler, LLC and may be served with process in Round Rock, Williamson County, Texas.

18.     Defendant, Paul Stefan, P.G., is an individual and a licensed geoscientist and principal partner at Environmental Resources Management Southwest Inc. and may be served with process in Houston, Harris County, Texas.

19.     Defendant, Christopher Young, P.G., is an individual and a licensed geoscientist at Environmental Resources Management Southwest Inc. and may be served with process in New Orleans, Louisiana.

## I. FACTS

20.    For more than 50 years Defendant, Union Pacific Railroad Company ("Union Pacific") and its predecessors, maintained plant operations at their facility located at 4910 Liberty Road Houston, Texas 77026 in the residential neighborhoods of Kashmere Gardens and Fifth Ward. Defendant Union Carbide used the plant located in these communities to treat wood railroad ties with a chemical called creosote.

21.    In 2019, a senior Texas Commission on Environmental Quality ("TCEQ') official requested that the Texas Department of Health and Human Services conduct a cancer cluster survey of the Kashmere Gardens and Fifth ward communities. The official explained that the area had soil and groundwater contamination of creosote and related compounds. The TCEQ official also stated that the groundwater underneath more than 100 homes north of the facility is contaminated at various depths.

22.    In August of 2019, the TCEQ investigated the occurrence of six types of adult (ages 20 years or older) cancers within the Fifth Ward and Kashmere Gardens communities. The investigation revealed increased occurrences of various types of cancers. On May 31, 2019 Defendant collected groundwater and sent a report for analysis. On July 3, 2019, in addition to Creosote contamination of the groundwater, the samples submitted to TCEQ revealed arsenic at 3x the acceptable limit; barium at greater than 2000x the acceptable limit; lead at greater than 9x the acceptable limit; chromium levels that are over the acceptable limit; and sulfide levels that were over the acceptable limit.

23.    The primary contaminate creosote, is the name used for a variety of products that are mixtures of many chemicals. It contains arsenic and other volatile organic compounds such as pentachlorophenol; naphthalene and tetrachlorodibenzo-p-dioxin depending on the creosote

4

makeup. Creosote has also been identified by multiple regulatory agencies as a probable carcinogen.

24.     In the 1980s, creosote was discontinued as a wood treatment due to safety concerns. However, the waste from decades of creosote use at Defendant's facility in Fifth Ward and Kashmere Gardens was never removed. Consequently, the toxic chemicals have continued to contaminate the soil, air, and water in the historic neighborhoods. The dangerous contaminates have and will continue to damage Plaintiffs and other residents of the community. This is apparent from Defendants' recent efforts to remediate certain portions of the hazardous waste on site.

25.     For years Defendants knew or should have known that the creosote plume and other contaminants were a danger to the residents of Fifth Ward and Kashmere Gardens. Despite this knowledge, Defendants continued to represent to community residents that there was no threat of contamination or human exposure. Defendants' knowledge of the danger caused by the contamination is evidenced by the fact that in 2014, Defendants' and their representatives contacted property owners in the Fifth Ward and Kahmere Gardens neighborhoods and presented them with restrictive covenants requesting that they agree not to use their ground water. The cited reason for Defendants' request was the existence of "chemicals of concern" and although the document mentioned the creosote plume, it stated "the chemicals of concern were managed such that human exposure was prevented and that other ground water resources were protected."

26.     In April of 2019 Defendants' submitted a request for permit renewal to the TCEQ. In a document titled 4th Technical Notice of Deficiency, the TCEQ noted the following concerns after reviewing various documents submitted by Defendant Union Carbide:

a)      Review of the August 13, 2018 Monitoring Report indicates that the groundwater plume has migrated approximately 200 feet to the north/northeast affecting additional off-site properties.

b)    Review of the December 3, 2018 and February 12, 2019, "Off-site Notification Updates" indicate the number of off-site properties impacted by the groundwater plume migration increased from 101 to 110 properties.

c)    UPPR's current monitoring well system fails to monitor groundwater protective concentration level exceedance (PCLE) and dense non-aqueous phase liquid (DNAPL) zones throughout each of the four transmission zones, therefore, further assessment is needed which includes the installation of additional wells and monitoring data. Additional assessment is discussed in more detail in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

d)    The current assessment of the total petroleum hydrocarbon – non-aqueous phase liquid (TPH-NAPL) seep source(s) and extent is insufficient because only a limited soil assessment was performed. Additional soil and groundwater assessments is needed which shall include additional soil borings, well installation and monitoring. Additional assessment is discussed in more detail in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

e)    The RAP does not include the implemented TPH-NAPL interim response actions for the Englewood Intermodal Yard cap area. The RAP needs to be revised to include the installed system design, procedures and a schedule for evaluation of the effectiveness of the response action as outlined in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

f)    Evaluation of potential Vapor Intrusion (VI) is needed.

g)    Since the plume has migrated, the proposed corrective action program consisting of plume management zones (PMZs) with monitored natural attenuation (MNA), and monthly DNAPL recovery contained in the RAP Rev. 3 is inadequate and does not control nor adequately monitor the extent of the plume. The corrective action program in RAP Rev.3 requires revision as outlined in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

h)    UPPR has failed to obtain the necessary consent from off-site affected property owners for an off-site PMZ. In the April 10, 2017 3rd NOD, the TCEQ denied UPRR's request for the Technical Impracticability (TI) for DNAPL removal because UPRR did not make an adequate demonstration in accordance with 30 TAC §350.33(f)(3)© requirements of TRRP.

i)    Therefore, for the proposed PMZ boundary to extend off-site, UPRR must obtain written consent from all off-site affected property owners to file a restrictive covenant (RC) prohibiting the use of groundwater on their property. However, some off-site property owners have declined consent or cannot be located to obtain consent. Without the consent of the off-site property owner's the TCEQ cannot approve an off-site PMZ. There are other avenues which would allow an off-site PMZ without the consent of property owners, but UPPR has not satisfied those

requirements as specified in 30 TAC 350.111©(2) and TCEQ Guidance TRRP-16 (TCEQ RG-366/TRRP-16 May 2010).

*See* Exhibit A. TCEQ April 11, 2019 Letter.

27.     The TCEQ's concerns confirm that Defendants' representations in its 2014 proposed Restrictive Covenants were false. The contamination was not properly managed. As noted in subsections (a) – (i) above, the contaminants spread to other water and soil. This resulted in the presence of creosote and other chemicals that exceed acceptable levels as explained in the preceding paragraphs. The presence of these chemicals in the water and the air have resulted in injuries and damages including increased occurrences of cancer.

## CAUSES OF ACTION – NEGLIGENCE

28.     Defendants are negligent in that they breached several duties owed to Plaintiffs. Further, Defendants' breach proximately caused significant injury to Plaintiffs. Specifically, Defendants breached their duty to Plaintiffs by:

a) Failing to adequately warn Plaintiffs about the risks associated with potential creosote and toxic chemical contamination;

b) Failing to properly dispose of toxic materials known to be hazardous to Plaintiffs;

c) Continuing to utilize creosote and other toxic chemicals despite being aware of said toxicity;

d) Failing to notify Plaintiffs about contamination caused by Union Pacific and the risks relating to contamination;

e) Failing to mitigate contamination in light of knowing about the risks associated with contamination by creosote and toxic materials; and

7

f) Failing to properly prevent the general public from being exposed to creosote and toxic chemicals despite knowing about the risks associated with exposure to creosote and other toxic chemicals.

29.     As a result of Union Pacific's acts and omissions, Plaintiffs suffered significant injuries and continue to sustain injuries associated with exposure.

## CAUSES OF ACTION – NEGLIGENCE PER SE

30.     Union Pacific's acts and omissions also resulted in violations of the Texas Administrative Code. Notably, Union Pacific violated 30 Tex. Admin. Code § 335 which establishes standards applicable to industrial solid waste and municipal hazardous waste. 30 Tex. Admin. Code § 335.4 explicitly states:

"No person may cause, suffer, allow, or permit the collection, handling, storage, processing, or disposal of industrial solid waste or municipal waste in such a manner so as to cause:

1. the discharge or imminent threat of discharge of industrial solid waste or municipal hazardous waste into or adjacent to the waters in the state without obtaining specific authorization for such a discharge from the Texas Commission on Environmental Quality;

2. the creation and maintenance of a nuisance; or

3. the endangerment of the public health and welfare."

Moreover, 30 Tex. Admin. Code §335.177 states:

"No person may cause, suffer, allow, or permit the storage, processing, r disposal of hazardous waste in such a manner so as to cause:

1. the discharge or imminent threat of discharge of hazardous waste, hazardous or nonhazardous constituents, or any other materials resulting from industrial solid waste activities, including, but not limited to, reaction products, into or adjacent to the waters in the state without specific authorization for such discharge from the Texas Natural Resource Conservation Commission;

2. the creation and maintenance of a nuisance; or

3. the endangerment of the public health or welfare."

31.     Union Pacific's acts and omissions present clear violations of the Texas Administrative Code; and, consequently constitute Negligence Per Se.

## CAUSES OF ACTION – NEGLIGENT MISREPRESENTATION

32.     Union Pacific's failure to adequately warn Plaintiffs about the dangers associated with Creosote and other toxic chemicals represents negligent misrepresentation by Union Pacific. Union Pacific provided false information regarding the extent of risk associated with exposure to Creosote during the course of its business. Moreover, despite knowing about the risks associated with exposure to creosote and other toxic chemicals, Union Pacific failed to exercise reasonable care or competence in communicating this information. Accordingly, in addition to the considerable bodily injuries Plaintiffs endured, Plaintiffs suffered significant pecuniary losses by relying on the representations made by Union Pacific. Given the above-mentioned, Union Pacific's acts and omissions amount to negligent misrepresentation.

## CAUSES OF ACTION – FRAUD

33.     Additionally, Union Pacific's acts and omissions constitute fraud. Union Pacific had a duty to disclose the extent of the danger associated with exposure to creosote and other toxic chemicals, and deliberately failed to disclose this information. Moreover, Plaintiffs were not aware of the extent of danger associated with said exposure and did not have an opportunity to discover them.

34.     Upon information and belief, Union Pacific's failure to disclose this valuable information was intended to keep Plaintiffs from acting on the information that was withheld. Finally, Union Pacific's failure to disclose the aforementioned information resulted in Plaintiffs sustaining serious injuries.

## CAUSES OF ACTION – NUISANCE

35.     Union Pacific's acts and omissions continue to substantially interfere with Plaintiffs' use and enjoyment of their land, contaminated by creosote and other chemicals. Consequently, their acts and omissions have caused unreasonable discomfort or annoyance for Plaintiffs.

36.     The conditions caused by Union Pacific's contamination of land in the Greater Fifth Ward Area have amounted to an unreasonable interference with rights common to the general public, including permitting the wrongful disposal of creosote and other chemicals into public right of ways.

## JURY REQUEST

37.     Plaintiff hereby requests a trial by jury.

## RELIEF REQUESTED

Plaintiff respectfully requests relief as follows:

1.     Past and future medical expenses;

2.     Past and future physical impairment;

3.     Past and future physical pain and suffering;

4.     Property damage;

5.     Actual damages;

6.     Prejudgment and post judgment interest as permitted by law; and

7.     All other actual, general and special damages, to which he is entitled by law and equity.

Respectfully submitted,

**STEPHENS REED & ARMSTRONG, PLLC**

By:___*/s/ Derrick A. Reed*_____

    **Derrick A. Reed**
    Attorney-in-Charge
    Federal I.D. No.: 899172
    State Bar No.: 24053780
    Email: derrick@srapllc.com
    12234 Shadow Creek Parkway, Suite 1104
    Pearland, Texas 77584
    Telephone: (281) 489-3934
    Facsimile: (713) 391-8349

**ATTORNEYS FOR PLAINTIFFS**

CO-COUNSEL:

**Marrick Armstrong**
Federal I.D. No.: 611068
State Bar No. 24057695
Email: marrick@srapllc.com

**Kenneth Stephens**
State Bar No. 24082255
Email: kenneth@srapllc.com

**STEPHENS REED & ARMSTRONG, PLLC**
12234 Shadow Creek Parkway, Suite 1104
Pearland, Texas 77584
Telephone: (832) 622-6562
Facsimile: (713) 391-8349

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on April 27, 2020 in accordance with the Federal Rules of Civil Procedure by filing the document with the Court's ECF system. Electronic copies were also emailed to all counsel.

                  _____*/s/ Derrick Reed*_____
                  Derrick A. Reed