EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **BETTY CHENIER**, **EDDIE CUMBO,** | § | |
| **THOMAS EDISON, BRIGITTE GONZALEZ,** | § | |
| **KEISHA GRIGSBY, JOSHUA JONES** Eт. **AL.** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:20-CV-01107** |
| | § | |
| **UNION PACIFIC RAILROAD COMPANY,** | § | |
| **PASTOR, BEHLING & WHEELER, LLC,** | § | |
| **ENVIRONMENTAL RESOURCES** | § | |
| **MANAGEMENT SOUTHWEST, INC.** | § | |
| **ERIC C. MATZNER, P.G.,** | § | |
| **PAUL STEFAN, P.G., and** | § | |
| **CHRISTOPHER YOUNG, P.G.** | § | |
| | § | |
| | § | |
| *Defendants.* | § | **JURY REQUESTED** |
| | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT AND JURY REQUEST

TO THE HONORABLE JUDGE OF THIS COURT

COMES NOW Betty Chenier, Eddie Cumbo, Thomas Edison, Brigitte Gonzalez, Keisha Grigsby, Joshua Jones et. al. ("Plaintiffs"), file this Amended Complaint and Jury Request against Union Pacific Railroad Company, Pastor, Behling & Wheeler, LLC, Environmental Resources Management Southwest, Inc., Eric Matzner, Paul Stefan, and Christopher Young and in support respectfully shows as follows:

1

**PARTIES AND SERVICE**

1.      Plaintiff, Betty Chenier, resides at 1009 Redondo Dr. Houston, Harris County, Texas.  Betty Chenier suffered both personal injury and property damage as a result of Defendants' actions and inactions.

2.      Plaintiff, Eddie Cumbo, is a resident of Houston, Harris County, Texas. Eddie Cumbo suffered both personal injury and property damage as a result of Defendants' actions and inactions.

3.      Plaintiff, Thomas Edison, resides at 7320 Jensen Drive, #122, Houston, Harris County, Texas.  Thomas Edison suffered both personal injury and property damage as a result of Defendants' actions and inactions.

4.      Plaintiff, Brigitte Gonzales, as next friend of minor, V.G., resides at 808 Woodland Street, Houston, Harris County, Texas. Brigitte Gonzales suffered both personal injury and property damage as a result of Defendants' actions and inactions.

5.      Plaintiff, Carolton Hall, is a resident of Houston, Harris County, Texas. Carolton Hall suffered both personal injury and property damage as a result of Defendants' actions and inactions.

6.      Plaintiff, Letisha Johnson, is a resident of Houston, Harris County, Texas. Letisha Johnson suffered both personal injury and property damage as a result of Defendants' actions and inactions.

7.      Plaintiff, Joshua Jones, resides at 4539 Market St., Houston, Harris County, Texas. Joshua Jones suffered both personal injury and property damage as a result of Defendants' actions and inactions.

8. Plaintiff, Deron McGurie, resides at 3609 Cactus Street, Houston, Harris County, Texas. Deron McGuire suffered both personal injury and property damage as a result of Defendants' actions and inactions.

9. Plaintiff, Lisa Moore, resides at 5401 Arapahoe Street, Houston, Harris County, Texas. Lisa Moore suffered both personal injury and property damage as a result of Defendants' actions and inactions.

10. Plaintiff, Carol Nelams, resides at 4911 Noble Street, Houston, Harris County, TExas. Carol Nelams suffered both personal injury and property damage as a result of Defendants' actions and inactions.

11. Plaintiff, Karen Robinson, resides at 3303 Gillespie Street, Houston, Harris County, Texas. Karen Robinson suffered both personal injury and property damage as a result of Defendants' actions and inactions.

12. Plaintiff, Latacha Williams Ruth resides at 5315b Cypress Creek Parkway, Houston, Harris County, Texas. Latacha Williams Ruth suffered both personal injury and property damage as a result of Defendants' actions and inactions.

13. Plaintiff, Leslie Washington, resides at 11230 Blades Street, Houston, Harris County, Texas. Leslie Washington suffered both personal injury and property damage as a result of Defendants' actions and inactions.

14. Defendant, Union Pacific Railroad Company, is a corporation organized and existing under the laws of the State of Delaware. This Defendant is authorized to do business in Texas and may be served by serving its registered agent for process in Texas, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.3.

15.     Defendant, Pastor, Behling & Wheeler, LLC, is a domestic limited liability company organized and existing under the laws of the State of Texas with a principal place of business in Round Rock, Texas. This Defendant is authorized to do business in the State of Texas and may be served with process through its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

16.     Defendant, Environmental Resources Management Southwest Inc., is a domestic limited liability company organized and existing under the laws of the State of Texas with a principal place of business in Houston, Texas. This Defendant is authorized to do business in the State of Texas and may be served with process through its registered agent for service of process, Cogency Global Inc., 1601 Elm St., Suite 4360, Dallas, TX 75201.

17.     Defendant, Eric C. Matzner, P.G., is an individual and a licensed geoscientist working for   Pastor, Behling & Wheeler, LLC and may be served with process in Round Rock, Williamson County, Texas.

18.     Defendant, Paul Stefan, P.G., is an individual and a licensed geoscientist and principal partner at Environmental Resources Management Southwest Inc. and may be served with process in Houston, Harris County, Texas.

19.     Defendant, Christopher Young, P.G., is an individual and a licensed geoscientist at Environmental Resources Management Southwest Inc. and may be served with process in New Orleans, Louisiana.

### JURISDICTION AND VENUE

20.     Jurisdiction and Venue is dependent upon this Court's ruling on Plaintiff's Motion for Leave To Amend the Complaint to Add Additional Parties and For Remand.

### NATURE OF THE ACTION

21.     This is a toxic tort matter based upon a community of people being exposed to and physically injured by a well-known carcinogen.

### CONDITIONS PRECEDENT

22.     All conditions precedent to jurisdiction have occurred or been complied with.

### FACTS

**A.  Contamination**

23.     For over 50 years, Defendant, Union Pacific Railroad Company ("Union Pacific") and its predecessors, have maintained ownership and plant operations at one of their local facilities located at 4910 Liberty Road Houston, Harris County, Texas 77026 (the "Property").   This Property, known as "Houston Wood Preserving Works," is located in and near the historic Houston residential neighborhoods of Fifth Ward and Kashmere Gardens.  Union Pacific used and disposed of various toxic chemicals, including creosote, on this Property for decades which resulted in the contamination of the air, water, and soil on the Property and the surrounding Fifth Ward and Kashmere Gardens communities.

24.     From approximately 1950 to 1985, the Property served as a wood treatment plant for Southern Pacific Transportation Company.  Southern Pacific Transportation Company closed the Property in 1985 for reasons presently unknown.  However, the Property was reopened and put back into full operation in approximately 1996 following the merger of Union Pacific and Southern Pacific Transportation Company.

25.     Union Pacific utilized the Property to heat millions of gallons of toxic chemicals, including a hazardous chemical, creosote, in open air vats and ditches in order to treat wooden railroad ties and telephone poles.  The waste produced from the wood treatment process and toxic chemicals located at the Property, among other things, was also dumped on the Property.  This and other processes conducted and overseen by Union Pacific was the cause of the permeation of creosote and other toxic chemicals in the air, water and soil that Plaintiffs came in contact with on a daily basis.

**B.  Creosote**

26.     The primary contaminate, creosote is a mixture of toxic chemicals, including but not limited to: arsenic, pentachlorophenol, benzene, toluene, dioxin and polycyclic aromatic hydrocarbons. Creosote has also been identified by multiple regulatory agencies as a probable carcinogen.

27.     The toxic effects of creosote have been public information since the 1950s. Creosote has been widely known to cause cancer and various birth defects, such as lung, bronchial, esophagus, larynx, bladder, and nasal cavity cancers among other things.  In 1978, the Environmental Protection Agency ("EPA") attempted to ban the chemical entirely.

28.     In the 1980s, creosote was discontinued as a wood treatment at the Property due to safety concerns. However, the waste from decades of creosote use at Defendant's facility in Fifth Ward and Kashmere Gardens was never removed. Consequently, the toxic chemicals have continued to contaminate the soil, air, and water in the historic neighborhoods. The dangerous contaminates have and will continue to damage Plaintiffs and other residents of the community.

29.     Union Pacific ended creosote processing on their property in the 1980s.  However, millions of gallons of waste still remain on the Property today.  For more than fifty years the use,

storage and improper disposal of creosote and other toxic chemicals have contaminated the air, water and soil surrounding the Property.  Today, the Property continues to test positive for toxic chemical and creosote exposure above levels considered safe for humans.

30.     The abandoned waste has also resulted in the formation of an underground plume of creosote sludge, or dense, non-aqueous phase liquid ("DNAPL").  DNAPL is a heavy liquid that spreads outward and impacts the surrounding ground water far beyond the property line.

31.     Since 1991, the Property has been regulated by the Texas Commission on Environmental Quality ("TCEQ") to ensure environmental safety.  Union Pacific must receive hazardous waste permits from the TCEQ in order to store, process or dispose of waste.[1]

### C.  Geoscience Firms: Co-Defendants Involvement

32.     Union Pacific was required to submit geoscientific information to the TCEQ to maintain its hazardous waste permits.[2]  Under Texas law, all geoscientific work required by state or federal regulation must be performed under the exclusive "control," "supervision" and "direction" of a licensed geoscientist.[3] Accordingly, all documents submitted to TCEQ containing geoscientific work must be signed and sealed by a licensed geoscientist.[4]

33.     Union Pacific subsequently hired two Texas registered geoscientific firms, Environmental Resources Management Southwest Inc. ("ERM") and Pastor, Behling & Wheeler,

---

[1] See 30 TEX. ADMIN. CODE § 335.2 ("No person may cause, suffer, allow, or permit any activity of storage, processing, or disposal of any industrial solid waste or municipal hazardous waste unless such activity is authorized by a permit, amended permit, or other authorization from the Texas Commission on Environmental Quality (commission) or its predecessor agencies, the Department of State Health Services (DSHS), or other valid authorization from a Texas state agency.").

[2] See 30 TEX. ADMIN. CODE § 335.553.

[3] GEOSCIENTISTS - TEX. OCC. CODE ANN § 1002.251 - License Required
(c) A person may not take responsible charge of a geoscientific report or a geoscientific portion of a report required by municipal or county ordinance, state or federal law, state agency rule, or federal regulation that incorporates or is based on a geoscientific study or geoscientific data unless the person is licensed under this chapter.; TEX . OCC . CODE  ANN . § 1002.002(8).
"Responsible charge" means the independent control and direction of geoscientific work or the supervision of geoscientific work by the use of initiative, skill, and independent judgment.

[4] 30 TEX . ADMIN . CODE  § 335.553.

LLC ("PBW"), to perform geoscientific services on the Property in order to obtain hazardous waste permits from the TCEQ.  Paul Stefan and Christopher Young are both licensed geoscientists at ERM.  Mr. Stefan is also a principal partner at ERM.  Eric Matzner is a licensed geoscientist employed by PBW.

34.     Mr. Matzner, Mr. Stefan and Mr. Young were all individually involved for over 10 years in the overall testing and evaluation of any hazardous chemicals that existed on the Property, including creosote.  They each performed geoscience work for Union Pacific's hazardous waste permits and drafted and submitted sealed geoscientific reports and studies to the TCEQ for at least the last 15 years.

35.     Each of these geoscientific reports, studies, and permit renewal applications, some of which are attached as Exhibits A – L, misrepresented the existence the Property's hazardous waste and its lasting effect on the Plaintiffs and the surrounding community.  They included, but were not limited to, the following publicly available documents:[5]

|  |  |
|---|---|
| December 2003 | RCRA Permit & Compliance Plan:<br>Signed by ERM Licensed Geoscientist, Paul Stefan, PG |
| January 2004 | Hazardous Waste Permit Annual Report:<br>Sealed by ERM Licensed Geoscientists Paul Stefan, PG<br>and Christopher Young, PG |
| June 2004 | Revised Affected Property Assessment Report<br>Sealed by ERM Licensed Geoscientists, Paul Stefan, PG<br>and Jennifer L. Perry, PG |
| July 2004 | Hazardous Waste Permit Semiannual Report:<br>Sealed by Licensed Geoscientists, Paul Stefan, PG and<br>Christopher Young, PG |

---

[5] *See* Exhibits A – L: Geoscientific Reports & Documents submitted by ERM and PBW to the TCEQ for Union Pacific



January 2005        Hazardous Waste Permit Annual Report:
                    Sealed by ERM Licensed Geoscientists, Paul Stefan, PG
                    and Christopher Young, PG

July 2005           Hazardous Waste Permit Semiannual Report:
                    Sealed by Licensed Geoscientists, Paul Stefan, PG and
                    Christopher Young, PG

January 2006        Hazardous Waste Permit Semiannual Report:
                    Sealed by Licensed Geoscientists, Paul Stefan, PG and
                    Christopher Young, PG

January 2007        Corrective Action Monitoring Report
                    Sealed by PBW Licensed Geoscientist, Eric C. Matzner,
                    P.G.



| January 2010 | Corrective Action Monitoring Report<br>Sealed by PBW Licensed Geoscientist, Eric C. Matzner, P.G. |
|---|---|
| June 2012 | Corrective Action Monitoring Report<br>Sealed by PBW Licensed Geoscientist, Eric C. Matzner, P.G. |
| December 2014 | RCRA Part B Permit Renewal Application<br>Sealed by PBW Licensed Geoscientist, Eric C. Matzner, P.G. |
| December 2015 | RCRA Part B Permit Renewal Application<br>Revision No. 1<br>Sealed by PBW Licensed Geoscientist, Eric C. Matzner, P.G. |

36.     ERM and PBW's geoscientific studies and work, which was controlled by Mr. Matzner, Mr. Stefan and Mr. Young, failed to properly investigate, analyze, review and suggest solutions for the hazardous chemicals and waste that all Defendants knew existed on the Property.

37.     Based on the extensive work that the aforementioned geoscientists performed and the reports/studies generated, Union Pacific, ERM and PBW, knew or should have known that the

creosote plume and other contaminants were a danger to the Plaintiffs and many other residents of the Fifth Ward and Kashmere Gardens communities. Despite this knowledge, Defendants misrepresented the threat creosote and DNAPL posed to community residents in order to receive operational permits and conceal their causal link to the severity of the contamination.

38.     Plaintiffs live in the communities directly affected by Union Pacific's contamination and within a mile or less of the Property.  As a result, Plaintiffs have suffered injuries in the form of cancer, death and property damage resulting from exposure to the toxic chemicals used, stored and disposed of on Union Pacific's Property.

**D.  TCEQ's Discovery and Mandate**

39.     Following Union Pacific's December 2014 permit renewal application (Exhibit K),[6] the TCEQ suggested corrective measures for mitigating the effects of the plume growing underground by properly testing the extent of contamination within the community and/or informing nearby residents of the severity of the contamination and its potential effects.

40.     Defendants Union Pacific and PBW subsequently sent a letter to property owners, including Plaintiffs, citing the existence of "chemicals of concern" as the reason for the restrictive covenants that they was now imposing.  However, the letter minimized the severity of damage by representing that "the chemicals of concern were managed such that human exposure was prevented and that other ground water resources were protected."

---

[6] See Exhibit K: Union Pacific's RCRA Part B Permit Renewal Application

Portions of the soils and/or groundwater of the Property contain certain identified chemicals of concern causing those portions of the Property to be considered an Affected Property as that term is defined in the TRRP.

The portion considered to be Affected Property is described on Exhibit 2, which is part of the plume management zone shown in Exhibit 3 attached hereto and incorporated herein by reference.

This Restrictive Covenant is required for the following reasons:

The Affected Property is subject to the TRRP requirements for properties with an area overlying a TCEQ-approved plume management zone. A plume management zone is defined as an area of groundwater containing concentrations of chemicals of concern exceeding the TCEQ-approved protective concentration levels for the site, plus any additional area allowed by the TCEQ in accordance with 30 TAC §350.33(f)(4). A plume management zone was established so that the chemicals of concern in the groundwater are managed such that human exposure is prevented and that other groundwater resources are protected. The attached Exhibit 3 provides the location and extent of the plume management zone and describes the maintenance and monitoring required. This maintenance and monitoring is required until TCEQ approves some modification of these requirements.

TCEQ had already informed Union Pacific that the chemicals exceeded a safe limit. However, Defendants failed to express to residents the hazardous and injurious nature of these chemicals and the likelihood of human exposure.

41.     In 2019, a TCEQ senior official identified that the area on and near the Property had soil and groundwater contamination of creosote and related compounds.  This senior official's report also revealed arsenic at 3x the acceptable limit; barium at greater than 2000x the acceptable limit; lead at greater than 9x the acceptable limit; chromium levels that are over the acceptable limit; and sulfide levels that were over the acceptable limit.  Each of the aforementioned chemicals are known cancer causing agents.  Testing also uncovered that the groundwater underneath more than 100 homes north of the facility is contaminated at various depths.

42.     In 2019, the TCEQ sent a "4th Technical Notice of Deficiency for Permit Renewal" letter to Union Pacific.  In this letter, the TCEQ outlined a number of serious issues relating to

the chemicals and waste on the Property that, after over 4 years, still were of concern and were

affecting the surrounding community.[7]  The TCEQ also noted the following, among other things:[8]

a)   Review of the August 13, 2018 Monitoring Report indicates that the groundwater plume has migrated approximately 200 feet to the north/northeast affecting additional off-site properties.

b)   Review of the December 3, 2018 and February 12, 2019, "Off-site Notification Updates" indicate the number of off-site properties impacted by the groundwater plume migration increased from 101 to 110 properties.

c)   UPPR's current monitoring well system fails to monitor groundwater protective concentration level exceedance (PCLE) and dense non-aqueous phase liquid (DNAPL) zones throughout each of the four transmission zones, therefore, further assessment is needed which includes the installation of additional wells and monitoring data. Additional assessment is discussed in more detail in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

d)   The current assessment of the total petroleum hydrocarbon – non-aqueous phase liquid (TPH-NAPL) seep source(s) and extent is insufficient because only a limited soil assessment was performed. Additional soil and groundwater assessments is needed which shall include additional soil borings, well installation and monitoring. Additional assessment is discussed in more detail in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

e)   The RAP does not include the implemented TPH-NAPL interim response actions for the Englewood Intermodal Yard cap area. The RAP needs to be revised to include the installed system design, procedures and a schedule for evaluation of the effectiveness of the response action as outlined in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

f)   Evaluation of potential Vapor Intrusion (VI) is needed.

g)   Since the plume has migrated, the proposed corrective action program consisting of plume management zones (PMZs) with monitored natural attenuation (MNA), and monthly DNAPL recovery contained in the RAP Rev. 3 is inadequate and does not control nor adequately monitor the extent of the plume. The corrective action program in RAP Rev.3 requires revision as outlined in comment nos. T35(4), T42(4), T43(3), T44(4), T45(4) and T48(3).

h)   UPPR has failed to obtain the necessary consent from off-site affected property owners for an off-site PMZ. In the April 10, 2017 3rd NOD, the TCEQ denied UPRR's request for the Technical Impracticability (TI) for DNAPL removal

---

[7] *See* Exhibit M: TCEQ April 11, 2019 Letter.
[8] *Id.*

13

because UPRR did not make an adequate demonstration in accordance with 30 TAC §350.33(f)(3)(c) requirements of TRRP.

i) Therefore, for the proposed PMZ boundary to extend off-site, UPRR must obtain written consent from all off-site affected property owners to file a restrictive covenant (RC) prohibiting the use of groundwater on their property. However, some off-site property owners have declined consent or cannot be located to obtain consent. Without the consent of the off-site property owner's the TCEQ cannot approve an off-site PMZ. There are other avenues which would allow an off-site PMZ without the consent of property owners, but UPPR has not satisfied those requirements as specified in 30 TAC 350.111(c)(2) and TCEQ Guidance TRRP-16 (TCEQ RG-366/TRRP-16 May 2010).

43.     The TCEQ's concerns confirm that Union Pacific and PBW's representations in their 2014 proposed Restrictive Covenants to the nearby community, which included Plaintiffs, were false. The contamination to the air, soil, and water had not been properly managed. As noted in subsections (a) – (i) above, the contaminants had spread to other water and soil. This resulted in the presence of creosote and other chemicals that exceed acceptable levels as explained in the preceding paragraphs.

44.     Due to their findings, concerns about contamination from the Property, and the alarming number of reports of cancer and other illnesses in the communities surrounding the Property, the TCEQ requested that the Texas Department of State Health Services (DSHS) conduct a cancer cluster survey.

**Email from TCEQ to DSHS**

Union Pacific Railroad - Former Houston Wood Preserving Works Facility
4910 Liberty Road
Houston, TX 77026

The company is renewing their RCRA permit and has on-site soil and groundwater contamination of creosote and related compounds arising from treating crossties with creosote since the early 1900s. The on-site soils have been capped, and a small area of off-site soils in the City of Houston right of way along the northern property boundary was also capped. The groundwater underneath 100+ homes north of the facility is contaminated at various depths. Please note that we are having the company explore whether or not vapor intrusion is a viable pathway underneath the houses.

Please conduct the cluster survey for the following cancers that are associated with the contaminants of concern:

acute mylogenous leukemia (AML)
respiratory tract (e.g., lung, esophagus, bronchus, trachea), but need excellent control for tobacco use
Skin (non-melanoma) & lips
bladder

If you need it, here's a link to demographic information for 77026:
http://www.city-data.com/zips/77026.html

45.     In August of 2019, the DSHS issued a report analyzing health and census data for the residential community (Fifth Ward and Kashmere Gardens) surrounding the Property from  the year 2000 to 2016.  The report showed the area, which includes the Plaintiffs' residences, had higher rates of cancer compared to typical cancer rates in the state.

46.     The study concluded that there were significantly higher rates of esophagus, larynx, lung and bronchus cancers, among other things.  Despite evidence of the increased incidents of cancer in the area surrounding the Property, including the Plaintiffs residences, Union Pacific has continued to neglect taking steps to warn Plaintiffs of the harmful effects of the creosote and toxic chemicals used, stored and dumped at or near the Property.

47.     In March of 2020, the TCEQ ordered Union Pacific to come up with a clean-up plan for the Property. [9]

**E.  Effect of Hazardous Creosote on Plaintiffs**

48.     Plaintiffs all currently own or owned in the past homes or real property in the area surrounding the Property, and thus have standing to bring this suit.

49.     Plaintiffs recall the distinct odor of chemicals permeating the air when rail ties and telephone poles were treated in creosote on Property.  After heavy rainfall, tar and oily water were visible in ditches and seeping from the ground throughout the community.  Neither fences nor signage were displayed around the contaminated areas.

50.      Plaintiffs did not receive any warning from Defendants regarding the dangerous nature of the creosote and other toxic chemicals that they were negligently being exposed to.

51.     The presence of these chemicals in the water, air, and soil have resulted in injuries and damages including increased occurrences of cancer.

52.     A TCEQ report issued on August 12, 2019, stated that the cancer rates in the area, which includes Plaintiffs' homes, were much higher than the typical cancer rates in Texas.  Despite the knowledge that the TCEQ attributes the high cancer rates, at least in part, to contamination from the Property, Union Pacific still decided to refrain from informing residents of the harm and potential for harm.

## DISCOVERY RULE

53.     The discovery rule applies when an injury is inherently indiscoverable, meaning it is by nature unlikely to be discovered within the prescribed statutory limits despite due diligence.

---

[9] *See* Exhibit N: Various news articles on the TCEQ's requirement that Union Pacific have a clean-up plan submitted by August 31, 2020.

When this rule applies, the statute of limitations does not begin until the Plaintiffs knew or should have known of Defendants' wrongful acts and its connection to the injuries they faced.

54.    Plaintiffs' injuries resulted from regular exposure to chemicals over an extended period of time.  This continuous exposure to hazardous chemicals caused Plaintiffs' injury.  These injuries took years to develop, and even when the symptoms manifested the injury was not immediately linked to the hazardous chemicals coming from Union Pacific's property. Despite due diligence, the injuries were unlikely to be uncovered prior to the statutory limitation period.

55.    Accordingly, the discovery rule applies to Plaintiffs' case and the statute of limitations does not begin until Plaintiffs knew or should have known of the connection between Defendants' actions and their injuries.

## CAUSE OF ACTION – NEGLIGENCE: PBW, ERM, PAUL STEFAN, CHRISTOPHER YOUNG, AND ERIC MATZNER

56.    Plaintiffs incorporate by reference each of the facts and allegations set forth above.

57.    Union Pacific hired PBW and ERM to provide geoscience services in order for Union Pacific to obtain hazardous waste permits from the TCEQ.  PBW, ERM, Mr. Stefan, Mr. Young, and Mr. Matzner owed various duties to Plaintiffs, including but not limited to ensuring that they were properly testing, studying, investigating and characterizing hazardous chemicals at or near the Property.  PBW, ERM, Mr. Stefan, Mr. Young, and Mr. Matzner breached these duties and were negligent in one or more of the following ways:

a)  Failing to properly characterize geoscientific components of the environmental and pollution remediation projects performed;

b)  Failing to properly study geoscientific components of the environmental and pollution remediation projects performed;

c)   Failing to properly appraise geoscientific components of the environmental and pollution remediation projects performed;

d)   Failing to properly investigate geoscientific components of the environmental and pollution remediation projects performed;

e)   Failing to properly analyze geoscientific components of the environmental and pollution remediation projects performed;

f)   Failing to properly review and evaluate geoscientific components of the environmental and pollution remediation projects performed;

g)   Failing to make proper recommendations regarding geoscientific components of the environmental and pollution remediation projects performed;

h)   Failing to warn Plaintiffs and Union Pacific of the health hazards associated with creosote and toxic chemicals used, stored and dumped at or near the property;

i)   Failing to properly monitor and test for air, soil, and water contamination caused by creosote and toxic chemicals known to be hazardous to human health;

j)   Failing to disclose the full extent and nature of the air, soil, and water contamination at or near the Property to Plaintiffs and governmental agencies;

k)   Failing to warn of or prevent property damage caused by soil and water contamination caused by creosote and toxic chemicals known to be hazardous to human health;

a)   Failing to obtain reliable or adequate meteorological and geological surveys to ensure creosote and toxic chemicals would not contaminate air, soil, and water in the area at or near the Property known to be hazardous to human health; and

b)   Failing to obtain reliable or adequate meteorological and geological surveys to reasonably evaluate the risk of air, soil, and water contamination by creosote and other toxic chemicals in the area at or near the Property.

58.   Plaintiffs suffered significant injuries and continued to sustain injuries proximately caused by PBW, ERM, Mr. Stefan, Mr. Young, and Mr. Matzner's acts and omissions.

18

**CAUSE OF ACTION – NEGLIGENCE: UNION PACIFIC**

59.     Plaintiffs incorporate by reference each of the facts and allegations set forth above.

60.     Union Pacific owed various duties to Plaintiffs, including but not limited to ensuring that Plaintiff was aware of and safe from any hazardous chemicals at or near the Property proximately caused significant injury to Plaintiffs when they breached one or more of the following duties owed to Plaintiffs:

a) Failing to properly review and evaluate geoscientific components of the environmental and pollution remediation projects performed;

b) Failing to warn Plaintiffs and the general public of the health hazards associated with creosote and toxic chemicals used, stored and dumped at or near the property;

c) Failing to safely use, store and dump creosote and other toxic chemicals known to be hazardous to human health;

d) Failing to take reasonable steps to prevent and mitigate air, soil and water contamination caused by creosote and toxic chemicals known to be hazardous to human health;

e) Failing to properly monitor and test for air, soil, and water contamination caused by creosote and toxic chemicals known to be hazardous to human health;

f) Failing to notify Plaintiffs and the general public of the air, soil, and water contamination caused by creosote and toxic chemicals known to be hazardous to human health;

g) Failing to notify governmental agencies and authorities of air, soil and water contamination caused by creosote and toxic chemicals known to be hazardous to human health;

h) Failing to disclose the full extent and nature of the air, soil, and water contamination at or near the Property to Plaintiffs, the general public, and governmental agencies;

i) Failing to employ, train and supervise employees on the safe handling, storage, use and containment of creosote, toxic chemicals and waste known to be hazardous to human health;

j) Failing to protect Plaintiffs and the general public from the harmful effects of exposure to creosote and toxic chemicals;

19

k) Failing to prevent creosote and toxic chemicals from permeating ground water and creating a creosote non-aqueous phase liquid beneath residential properties;

l) Failing to take timely and reasonable steps to contain the creosote non-aqueous phase liquid and mitigate the risks to human health posed by the creosote non-aqueous phase liquid;

m) Failing to warn of or prevent property damage caused by soil and water contamination caused by creosote and toxic chemicals known to be hazardous to human health;

n) Failing to obtain reliable or adequate meteorological and geological surveys to ensure creosote and toxic chemicals would not contaminate air, soil, and water in the area at or near the Property known to be hazardous to human health;

o) Failing to obtain reliable or adequate meteorological and geological surveys to reasonably evaluate the risk of air, soil, and water contamination by creosote and other toxic chemicals in the area at or near the Property;

p) Failing to prevent Plaintiffs and the general public from coming into contact with the creosote and other toxic chemicals emanating from the Property, including but not limited to, failing to implement safety barriers and security measures to prevent public access to creosote and toxic chemicals at or near the Property.

61. Plaintiffs suffered significant injuries and continued to sustain injuries proximately caused by Union Pacific's acts and omissions.

**CAUSE OF ACTION – NEGLIGENCE PER SE: UNION PACIFIC**

62. Plaintiffs incorporate by reference each of the facts and allegations set forth above.

63. Union Pacific violated and continues to violate the Texas Administrative Code's standards by utilizing, storing and disposing of creosote and toxic chemicals in a manner that applicable to industrial solid waste and municipal hazardous waste.

64. Union Pacific specifically violated the following:

30 Tex. Admin. Code § 335.4 explicitly states:

"No person may cause, suffer, allow, or permit the collection, handling, storage, processing, or disposal of industrial solid waste or municipal waste in such a manner so as to cause:

20

1.      the discharge or imminent threat of discharge of industrial solid waste or municipal hazardous waste into or adjacent to the waters in the state without obtaining specific authorization for such a discharge from the Texas Commission on Environmental Quality;

2.      the creation and maintenance of a nuisance; or

3.      the endangerment of the public health and welfare."[10]

Moreover, 30 Tex. Admin. Code §335.177 states:

"No person may cause, suffer, allow, or permit the storage, processing, or disposal of hazardous waste in such a manner so as to cause:

1.      the discharge or imminent threat of discharge of hazardous waste, hazardous or nonhazardous constituents, or any other materials resulting from industrial solid waste activities, including, but not limited to, reaction products, into or adjacent to the waters in the state without specific authorization for such discharge from the Texas Natural Resource Conservation Commission;

2.      the creation and maintenance of a nuisance; or

3.      the endangerment of the public health or welfare."[11]

65.      Union Pacific's acts and omissions present clear violations of the Texas Administrative Code and, consequently, constitute Negligence Per Se.

66.      Plaintiffs suffered significant injuries and continue to sustain injuries proximately caused by Union Pacific's acts and omissions.

**CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION: UNION PACIFIC, ERM & PBW**

67.      Plaintiffs incorporate by reference each of the facts and allegations set forth above.

---

[10] *See* 30 TEX. ADMIN. CODE § 335.4.
[11] *See* 30 TEX. ADMIN. CODE § 335.177.

68.     Defendants, Union Pacific, ERM and PBW made false representations to government agencies and Plaintiffs regarding the hazardous nature of creosote and toxic chemical contamination in the air, soil and water and their efforts to mitigate and monitor the exposure.

69.     Defendants provided false information regarding the extent of the risks associated with exposure to Creosote during the course of its business. Moreover, despite knowing about the risks associated with exposure to creosote and other toxic chemicals, Union Pacific failed to exercise reasonable care or competence in communicating this information. Plaintiffs not only endured considerable bodily injuries, but Plaintiffs also suffered significant pecuniary losses, as a result of their reliance on the misrepresentations made by Union Pacific.

70.     Union Pacific's failure to adequately warn Plaintiffs about the dangers associated with creosote and other toxic chemicals represents negligent misrepresentation by Union Pacific.

**CAUSE OF ACTION – FRAUDULENT CONCEALMENT: UNION PACIFIC, ERM & PBW**

71.     Plaintiffs incorporate by reference each of the facts and allegations set forth above.

72.     Defendants had a duty to disclose the extent of the danger associated with exposure to creosote and other toxic chemicals.  However, they deliberately concealed the severity of this information from Plaintiffs as well as the government agencies regulating their behavior. By concealing the scope of danger, Defendants left Plaintiffs unaware of the harm associated with exposure to the chemicals on the Property.

73.     Defendants were aware that chemicals on the Property exceeded the appropriate safety levels. Their failure to disclose this information was intended to obtain necessary operational permits and avoid any potential liability to Plaintiffs.

74.     As a result, Plaintiffs were unable to discover and mitigate the immediate harm and prevent further injury. Therefore, Defendants concealment of the aforementioned information resulted in Plaintiffs sustaining severe injuries.

### CAUSE OF ACTION – NEGLIGENT AND STRICT LIABILITY NUISANCE: UNION PACIFIC

75.     Plaintiffs incorporate by reference each of the facts and allegations set forth above.

76.     Plaintiffs all currently own, or owned in the past, homes or real property in the area surrounding the Property.

77.     Under Texas law, nuisance is a "condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it."[12]

78.     Substantial interference varies on a case-by-case basis. The damage occurring may include, but is not limited to, physical property damage, economic harm to the property's economic value, harm to the plaintiff's health, and harm to the plaintiff's peace of mind.[13]

79.     "Unreasonable discomfort or annoyance" refers to whether the effects of the substantial interference on the plaintiffs' comfort or contentment are unreasonable.[14]

80.     Union Pacific's use, storage and disposal of creosote and toxic chemicals on and around the Property contaminated the air, water and soil in the Greater Fifth Ward and Kashmere Gardens communities for decades. Union Pacific was aware or should have been aware that the use, storage, and disposal of the abnormally dangerous toxic chemicals on the Property could pose unreasonable discomfort, interference or annoyance to Plaintiffs.

---

[12] *Crosstex North Texas Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580 (Tex. 2016)
[13] *Id.*
[14] *Id.*

81.     Union Pacific acted unreasonably under the circumstances surrounding the use, storage and disposal of creosote and other toxic chemicals on and around the Property. Specifically, it was unreasonable for Union Pacific to fail to take the actions outlined in paragraph 62 (a) – (p) of this petition.

82.     With their use, storage and disposal of creosote and other toxic chemicals on and around the Property, Union Pacific clearly undertook an abnormally dangerous activity involving an abnormally dangerous substance.  It is no secret that the chemicals that occupied the Property, the air, the water, and the soil in the surrounding communities could and did pose a safety hazard to Plaintiffs and others in and around the vicinity of the Property.

83.     Plaintiffs suffered negligent and strict liability nuisances in light of the fact that, given their proximity to the Property, the use and enjoyment of the air that they breathed on a daily basis, the water that they consumed, and the soil that they lived on has been substantially interfered with, causing unreasonable discomfort and annoyance.  Their exposure to the air, water and soil has led to injuries being suffered by Plaintiffs, including of various cancers and other illnesses.

### RESPONDEAT SUPERIOR – UNION PACIFIC, ERM & PBW

84.     Plaintiffs incorporate by reference each of the facts and allegations set forth above.

85.     Defendants are liable for torts caused by their employees within their scope of employment.  While acting within their job duties and for Defendants' benefits, employees owed Plaintiffs at least a general duty to exercise reasonable care in performing their work.

86.     Defendants' employees did not utilize the required standard of due care regarding the use, storage and disposal of toxic chemicals which resulted in injuries to Plaintiffs.  Therefore,

Defendants are liable for the injuries Plaintiffs suffered as a result of Defendants' employees acts and omissions.

**JURY REQUEST**

87.     Plaintiffs hereby request a trial by jury and tender the appropriate fee with this Original Complaint.

**RELIEF REQUESTED – PERSONAL INJURY & PROPERTY DAMAGES**

88.     Plaintiffs incorporate by reference each of the facts and allegations set forth above.

89.     Plaintiffs request the following personal injury damages caused by Defendants be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate them:

  a.   Past and future physical pain Plaintiffs have suffered and will continue to suffer;

  b.   Physical impairment or disfigurement Plaintiffs have suffered and will continue to suffer;

  c.   Mental anguish Plaintiffs have suffered and will continue to suffer;

  d.   Pecuniary losses Plaintiffs have suffered and will continue to suffer;

  e.   Loss of earnings Plaintiffs have suffered and will continue to suffer;

  f.   Loss of opportunity Plaintiffs have suffered and will continue to suffer;

  g.   Any injunctive relief available to Plaintiffs;

  h.   The amount of reasonable medical expenses Plaintiffs have suffered and will continue to suffer;

  i.   Any damage Plaintiffs' property has suffered or will continue to suffer as a result of the chemical exposure;

j.   Past and future loss of use and enjoyment of real property; and

k.   Past and future diminished economic value of Plaintiffs' property.

l.   All such other and further relief that Plaintiffs are justly entitled by law and equity.

### RELIEF REQUESTED – EXEMPLARY DAMAGES

90.   Plaintiffs incorporate by reference each of the facts and allegations set forth above.

91.   Defendants considered the probability and magnitude of the potential harm they were causing to others, and Defendants were consciously aware of the extreme degree of risk involved. However, Defendants chose to act knowingly, willfully, intentionally, with full awareness, and the specific predetermined intention of benefitting at Plaintiff's expense.

92.   Defendants' failure to mitigate the contamination illustrates an attitude of conscious indifference for the rights, safety and welfare of others.   Additionally, their intentional concealment of the probability and magnitude of that harm shows Defendants' actual and subjective awareness of the dangers of such conduct. Therefore, Defendants are liable for exemplary/punitive damages.

Respectfully submitted,

**STEPHENS REED & ARMSTRONG, PLLC**

By:      */s/ Derrick A. Reed*

**Derrick A. Reed**
Attorney-in-Charge
Federal I.D. No.: 899172
State Bar No.: 24053780
Email: derrick@srapllc.com
12234 Shadow Creek Parkway, Suite 1104
Pearland, Texas 77584
Telephone: (281) 489-3934
Facsimile: (713) 391-8349

**ATTORNEYS FOR PLAINTIFFS**

26

CO-COUNSEL:

**Marrick Armstrong**
Federal I.D. No.:  611068
State Bar No. 24057695
Email:  marrick@srapllc.com

**Kenneth Stephens**
State Bar No. 24082255
Email:  kenneth@srapllc.com

**STEPHENS REED & ARMSTRONG, PLLC**
12234 Shadow Creek Parkway, Suite 1104
Pearland, Texas 77584
Telephone: (832) 622-6562
Facsimile: (713) 391-8349

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record on July 27, 2020 in accordance with the Federal Rules of Civil Procedure by filing the document with the Court's ECF system. Electronic copies were also emailed to all counsel.

_____ */s/ Derrick Reed* _____
Derrick A. Reed